UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
**BATOOL SADEGHZADEH,**                )
                                       )
   **Plaintiff,**       )
                                       )
   **v.**               )  Case No. 17-cv-01032 (APM)
                                       )
**UNITED STATES CITIZENSHIP &**        )
**IMMIGRATION SERVICES, et al.,**      )
                                       )
   **Defendants.**      )
_____ )

## MEMORANDUM OPINION

**I. INTRODUCTION**

  Plaintiff Batool Sadeghzadeh, an Iranian national, appeals from the denial of her immigrant investor visa application by Defendant United States Citizenship and Immigration Services ("Defendant" or "USCIS").[1] Plaintiff contends that she submitted ample evidence to show that she qualifies for such a visa based on her investment in a new commercial enterprise in the United States. Finding no violation in USCIS's decision, the court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

---

[1] Plaintiff sued the USCIS and three officials in the Department of Homeland Security in their official capacities. *See* Second Am. Compl., ECF No. 10 ¶¶ 9–11. For ease of reference, the court refers collectively to the four defendants in the singular as "Defendant."

## II. BACKGROUND

### A. Factual Background

#### 1. *The Initial Denial of Plaintiff's EB-5 Application*

Foreign nationals who invest a substantial amount of capital in the United States, upon meeting certain qualifications, may receive a priority visa known as an "EB-5" or "immigrant investor" visa. *See* 8 U.S.C. § 1153(b)(5). The EB-5 program requires that an applicant invest at least $500,000 in a new or troubled commercial enterprise, *see id.* § 1153(b)(5)(A)(i), (C); 8 C.F.R. § 204.6(f)–(g), (j), and that the investment create at least ten jobs for U.S. workers, *see* 8 U.S.C. § 1153(b)(5)(A)(ii). Applicants must complete the appropriate application, a Form I-526, and provide documentation establishing their eligibility for the EB-5 visa, including the source of the invested funds. *See* 8 C.F.R. § 204.6(a), (j). As one would expect, funds acquired through unlawful means cannot be put towards securing an EB-5 visa. *See id.* § 204.6(j) (providing that the applicant must have "invested, or [be] actively in the process of investing lawfully obtained capital").

Plaintiff Batool Sadeghzadeh, an Iranian national, seeks an EB-5 visa. On January 24, 2014, she submitted her Form I-526, claiming eligibility based on her investment of $500,000[2] in a real estate development in Seattle, Washington, known as the "255 South Kin[g] Street Limited Partnership" in August 2013.[3] *See* Administrative R., ECF No. 23 [hereinafter AR], at 1–7, 978. Plaintiff represented that she financed her investment through the sale of gold coins, rental income from an apartment that she owned with her husband in Iran, and her husband's income. *See* AR 8.

---

[2] The memorandum accompanying Plaintiff's Form I-526 noted that Plaintiff had transferred $539,000 as part of her participation in the 255 King Street Limited Partnership, but that only $500,000 "is considered equity capital" because $39,000 of her money went toward the Partnership's "syndication fee." *See* Administrative R., ECF No. 23, at 7–8.

[3] The 255 South King Street Limited Partnership is associated with American Life, Inc., which is a "regional center" under the immigrant investor program. *See* AR 7. Under the immigrant investor visa program, individuals can invest in a new commercial enterprise or a regional center. *See* AR 977. "Regional centers" are business entities designated by USCIS as promoting economic growth that are permitted to pool investor funds. *See* 8 C.F.R. § 204.6(j)(4)(iii), (m).

Among the records submitted with her application was a "Selling Invoice" dated August 12, 2013, which documented the sale of the gold coins. *See* AR 8; *see also* AR 73 ("Selling Invoice"). The Selling Invoice indicated that Plaintiff had sold "1000 gold coins-2007," at the price of "1,100,000/- Toomans" each, for a total sale of "1,100,000,000/- Toomans." AR 73. Toomans, or "tomans," are a form of Iranian currency. The bottom of the Selling Invoice, however, stated that the total sale was for "1,100,000,000/- (one billion and one hundred million *rials*)"—a different unit of Iranian currency. AR 73 (emphasis added).

Plaintiff represented that she "completed" the investment in the King Street Partnership "by sending the funds via wire transfer." AR 7. But as Plaintiff acknowledged, she did not directly wire the money from her bank to the development; rather, the funds were wired from entities in Dubai. *See* AR 7, 59–62. To verify that the wired funds were indeed hers, Plaintiff included with her application two letters confirming transfers "on behalf of Ms. Batool Sadeghzadeh" to "American Life INC," *see* AR 59–62, an entity associated with the King Street Partnership. The first letter, dated August 26, 2013, was from "RFH General Trading LLC"[4] and reported the transfer of "500,000 USD." *See* AR 59. Affixed to that letter was a stamp identifying as a mailing address a P.O. Box in Dubai, United Arab Emirates. *See* AR 59–60. A different P.O. Box appeared on the letterhead itself, however. AR 59–60. Additionally, in lieu of a name, the first letter closed with: "Sincerely yours, Authorized Signatory." AR 59–60. The second letter was from "Gloria Amy General Trading LLC" and bore the same P.O. Box number stamped on RFH General Trading's letter. AR 61. This letter, which also closed with "Authorized Signatory," represented that Gloria Trading had transferred "39,060 USD" to the bank account of "American Life INC" on behalf of Plaintiff. AR 61.

---

[4] The letterhead spelled the entity's name: "RFH General Tarding LLC." AR 59–60.

Defendant formally requested additional information from Plaintiff on July 28, 2016. *See* AR 775–81 ("Request for Evidence"). As relevant here, Defendant asked for information that would "verify the lawful path of the capital investment," including records showing "the path of the invested funds *from Petitioner* into the [development]." AR 778 (emphasis added). The request stated that Plaintiff's submission, thus far, was inadequate because it lacked "explanation or supporting documentation . . . to show Petitioner transferred funds from her personal banking account(s) to RFH General T[ra]ding . . . or Gloria Amy General Trading." AR 779. Defendant also asked for the foreign-language versions of certain records that were in English, in accordance with a regulation requiring the submission of original foreign language documents and translations. *See* AR 779–80. Plaintiff responded to the inquiry with additional evidence, including an affidavit and a letter from her attorney. *See* Pl.'s Mot. for Summ. J., ECF No. 17 [hereinafter Pl.'s Mot.], at 2; AR 917–18 (listing Plaintiff's additional evidence).

Defendant, acting through the office of its Immigrant Investor Program, nonetheless denied Plaintiff's application on December 8, 2016. *See* AR 914–21. The decision identified numerous deficiencies in Plaintiff's application. First, it concluded that Plaintiff had not demonstrated that she had invested the necessary amount of capital, because she had not provided sufficient documentation showing how she had transferred her money to the investment. *See* AR 917–18. Although Plaintiff had provided a wire transfer record from RFH General Trading, Defendant stated this record was "insufficient to demonstrate by a preponderance of evidence that Petitioner invested $500,000" in the commercial development. AR 918. The decision also identified "inconsistent and contradictory information" regarding the two wiring companies in Dubai, and rejected Plaintiff's affidavit as resolving Defendant's questions on this point, because there was no "independent objective evidence" to support her representations. *See* AR 918–19. Second,

Defendant concluded that Plaintiff had not sufficiently demonstrated that the source of her funds was lawful, in part because of conflicting representations as to the date on which the sale of the gold coins occurred. *See* AR 920. In an affidavit, Plaintiff had indicated that the sale took place on "August 7, 2016," yet the invoice that she supplied—which Plaintiff stated was prepared days after the sale—was dated "12 Aug 2013." *Id*. The denial also concluded that Plaintiff had not provided the original, foreign-language versions of certain documents. AR 918, 920.

    2.  *The Administrative Appeals Office's Denial of Plaintiff's EB-5 Application*

Plaintiff voluntarily appealed her decision to Defendant's Administrative Appeals Office ("AAO"), but fared no better in this second review. *See* AR 977. The AAO denied her appeal in a decision dated July 18, 2017. *See* AR 977–80. As relevant here, the AAO agreed with Plaintiff on two points: (1) that certain documents in English that she had submitted were original documents and therefore foreign-language originals were not required, and (2) that she had "resolved" the discrepancy as to the date of the sale of the gold coins, which took place on August 7, 2013. *See* AR 978–79. The AAO nevertheless denied Plaintiff's appeal because: (1) Plaintiff had failed to "document[ ] the complete path of funds" as required by *In re Izummi*, 22 I. & N. Dec. 169 (BIA 1998); and (2) the invoice for the gold coins contained an "inconsistency" regarding "the amount the [Plaintiff] received for the sale of the coins." AR 979.

As to the first reason, the AAO found that the records supplied did not trace Plaintiff's funds from her bank account in Iran to the limited liability companies in Dubai, nor did it explain those companies' "ownership and lawful business activities." AR 980. In addition, the AAO noted that a wire transfer record that Plaintiff represented as a document showing the movement of her funds stated that the transaction was for "BUYING GOODS." AR 980; *see also* AR 899–900. The AAO acknowledged Plaintiff's explanation regarding the difficulties attendant to providing the requested

5

documentation, namely, that it was not possible to directly wire funds from Iran to the United States in 2013, and that the person Plaintiff had used to conduct the transfer refused to provide a written statement explaining how the money was moved to Dubai. AR 980. Yet, the AAO determined that the submitted documentation remained insufficient, stating that "it remains [Plaintiff's] burden to trace the entire path of funds back to a lawful source." AR 980.

The AAO's second basis for the denial centered on the invoice Plaintiff supplied for the sale of the gold coins. The AAO took issue with an "inconsistency" regarding the amount Plaintiff received from selling her coins: The invoice listed the purchase price as both 1.1 billion tomans *and* 1.1 billion rials. *See* AR 979. Because one toman equals 10 rials, and given the uncertainty over the currency used to conduct the sale, the AAO concluded that this discrepancy meant that Plaintiff "ha[d] not . . . sufficiently demonstrated that the sale had financed her investment." AR 979.

B.     **Procedural Background**

Plaintiff filed suit in this court on May 30, 2017, *see generally* Compl., ECF No. 1, and amended her complaint on August 4, 2017, and August 15, 2017, *see generally* First Am. Compl., ECF No. 8; Second Am. Compl., ECF No. 10. In her Second Amended Complaint, she alleges that Defendant's denial of her EB-5 visa application was arbitrary and capricious and in excess of its statutory authority, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. *See generally* Second Am. Compl. Both parties moved for summary judgment based on the administrative record. *See generally* Pl.'s Mot.; Def.'s Cross-Mot. for Summ. J., ECF No. 18 [hereinafter Def.'s Mot.]. Those motions are now ripe.

## III. LEGAL STANDARD

Ordinarily, motions for summary judgment are reviewed under the standard set forth in Federal Rule of Civil Procedure 56, which requires a court to grant the motion when the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted). Accordingly, the standard in Rule 56 "does not apply because of the limited role of a court in reviewing the administrative record." *Doe v. U.S. Citizenship & Immigration Servs.*, 239 F. Supp. 3d 297, 305 (D.D.C. 2017). Summary judgment is "the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Se. Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). But even under this standard, an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).

## IV. DISCUSSION

Plaintiff challenges both bases for the AAO's denial of her application. First, she argues that she sufficiently demonstrated the path of her investment funds. Second, she contends that the AAO's factual finding that the Selling Invoice contained an inconsistency about the gold coins' sale price was arbitrary and capricious, because Plaintiff submitted evidence that the AAO ignored.

So long as the court is satisfied that one of the AAO's reasons for denying Plaintiff's application is a sufficient and independent basis for its decision, this court must affirm. The APA requires courts reviewing the agency record to take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706. Therefore, "a reviewing court will uphold an agency action resting on several independent grounds if any of those grounds validly supports the result." *Pierce v. SEC*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) (citing *Carnegie Nat'l Gas Co. v. FERC*, 968 F.2d 1291, 1294 (D.C. Cir. 1992)). In this case, the AAO's decision makes clear that it dismissed Plaintiff's appeal for two independent reasons: the failure to "document[ ] the complete path of funds" (i.e., the traceability of funds issue) and the failure to "provide[ ] consistent evidence regarding a major source of her investment capital" (i.e., the currency issue). AR 980. Therefore, Plaintiff must establish that both of the AAO's bases for denial were arbitrary and capricious in order to prevail on her motion for summary judgment.

### A. Path of Funds

The court's analysis begins with the AAO's conclusion regarding the path of funds. Plaintiff contends that she only needed to show that it was "more likely than not" that the funds that she used for her investment came from a lawful source, and that by insisting that she provide documentation about the way in which the funds reached the Dubai entities and additional information about those entities, the AAO improperly elevated the burden of proof. *See* Pl.'s

8

Reply, ECF No. 24, at 8; *see also* Pl.'s Mot. at 7–8. This argument fails because the AAO did no such thing.

The AAO's decision correctly states that, under governing regulations and precedent, an applicant must document the complete path of her investment funds. *See* AR 977–79 (citing 8 C.F.R. § 204.6(j)(3); *Izummi*, 22 I&N Dec. at 195). Plaintiff does not dispute that legal requirement. Nor does she contest that her application did not fully trace the invested funds. In particular, no record showed how the funds made their way from her bank account in Iran to the wiring companies in Dubai. The AAO was well within its discretion to demand evidence to fill that evidentiary gap. *See Izummi*, 22 I&N at 195 ("As the petitioner has not documented the path of the funds, such as by wire-transfer records, the petitioner has failed to meet his burden of establishing that the initial $120,000 were his own funds.").[5] Plaintiff has not cited any judicial or administrative case to the contrary. Therefore, the court finds no basis to believe that Defendant applied an artificially high evidentiary standard.

Plaintiff's second challenge to the AAO's path-of-funds conclusion fares no better. The AAO rejected as insufficient Plaintiff's attestation that she used "a person who had connections to wiring companies outside of Iran (in this case the UAE)" to move the funds, because such statement constituted an "unsupported affirmation" concerning an "unidentified person." AR 980. Plaintiff contends that the AAO's failure to accept her statement was arbitrary and capricious, because the AAO did not expressly find her to lack credibility and, in fact, credited other portions of her statement, such as the date of the coin sale. Pl.'s Mot. at 9. But in making this argument, Plaintiff

---

[5] Plaintiff seeks to distinguish *Izummi* as a case in which the petitioner failed to identify the *source* of the invested funds, whereas Plaintiff's source of funds is fully documented. Pl.'s Mot. at 11–12. Plaintiff is correct that *Izummi* primarily concerned unsettled questions about how the petitioner had obtained the invested funds in the first place. *See Izummi*, 22 I&N at 195. But that factual difference is not material. The lack of evidence here as to how Plaintiff transferred monies from her bank account to the Dubai entities raises the legitimate question whether the actual funds that entered the United States came from Plaintiff, or from some other source.

is asking the court to reweigh the factual evidence she presented to the agency. This the court cannot do. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Servs. Workers Int'l Union, AFL-CIO-CLC v. Pension Ben. Guar. Corp.*, 707 F.3d 319, 325 (D.C. Cir. 2013) ("[I]n judicial review of agency action, weighing the evidence is not the court's function."). To the extent Plaintiff contends that the AAO's decision rested on an unexplained rejection of her statement, Plaintiff is mistaken. "[A]n agency is generally under at least a minimal obligation to provide adequate reasons why it has rejected uncontradicted evidence." *Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 151 (3d Cir. 2004). The agency fulfilled its obligation here. The AAO's decision makes clear that Defendant considered all of Plaintiff's evidence, but concluded that, having failed to provide *any* corroborating proof of the movement of funds to Dubai or information concerning the identities of the wiring companies, Plaintiff had not met her evidentiary burden. Put another way, its decision did not rest on a rejection of Plaintiff's statement; it relied on the absence of evidence. Thus, Defendant's denial of Plaintiff's visa application for failure to trace her investment funds was not arbitrary and capricious.

  **B.**  **Currency Issue**

Plaintiff's challenge to the other, independent basis for the AAO's denial of her appeal—the discrepancy regarding the total value of gold coins transaction—provides an alternative basis for granting summary judgment to Defendant. As to this issue, Plaintiff contends that denying her visa application because she had not explained the inconsistency in the sale price of her gold coins was arbitrary and capricious because: (1) Defendant raised the issue for the first time in the AAO's decision, and (2) the record "can only lead to one reasonable explanation that the amount was actually in Toomans and not Rials." Pl.'s Mot. at 9–10. But, again, these arguments fail.

While Plaintiff understandably is surprised that Defendant did not previously raise the unit-of-currency issue earlier, its decision to do so in the AAO's final determination was not arbitrary and capricious. The AAO "exercises *de novo* review of all issues of fact, law, policy, and discretion." *U.S. Citizenship & Immigration Services*, AAO Practice Manual § 3.4, https://www.uscis.gov/about-us/directorates-and-program-offices/administrative-appeals-office-aao/practice-manual/chapter-3-appeals (last updated Apr. 18, 2018); *see also Soltane*, 381 F.3d at 145–46 (noting that the AAO reviewed record of a visa applicant de novo). This standard of review "means that, on appeal, the AAO looks at the record anew and its decision may address new issues that were not raised or resolved in the prior decision." AAO Practice Manual § 3.5; *accord Taco Especial v. Napolitano*, 696 F. Supp. 2d 873, 879 (E.D. Mich. 2010). That is precisely what the AAO did here. Moreover, because the currency inconsistency was contained in a record submitted by Plaintiff—the Selling Invoice—agency regulations did not obligate Defendant to give Plaintiff an opportunity to respond. *See* 8 C.F.R. § 103.2(b)(16)(i) (requiring the agency give an applicant an opportunity to rebut information that is "derogatory" *and* "unknown to . . . [the] applicant"). Therefore, although Plaintiff ideally would have been given the opportunity to address the discrepancy in the invoice, it was not arbitrary and capricious for the AAO not to do so.[6]

That leaves Plaintiff's disagreement with Defendant's finding that she failed to establish the purchase price of the gold coins. In arguing that Defendant should have drawn a different conclusion, Plaintiff again is asking the court to reweigh the evidence. As explained above, the court cannot reweigh the facts or otherwise "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. Therefore, the court denies Plaintiff's Motion as to this ground as well.

---

[6] For the same reasons, the AAO's questioning of the "buying goods" notation in the wire transfer document was not improper. *See* Pl.'s Mot. At 2–3. True, the initial decision only referenced the "buying goods" notation on the wire transfer papers, *see* AR 931, and did not specify that designation as a reason for denying Plaintiff's application. But under the agency's de novo review, the AAO was permitted to consider that discrepancy anew.

## V. CONCLUSION

For the foregoing reasons, the court denies Plaintiff's Motion for Summary Judgment, ECF No. 17, and grants Defendant's Cross-Motion for Summary Judgment, ECF No. 18. A separate Order accompanies this Memorandum Opinion.

Dated: August 20, 2018

Amit P. Mehta
United States District Judge